# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

MARCUS D. SMITH,

 Appellant,

 v.

DEPARTMENT OF
 TRANSPORTATION,

 Agency.

DOCKET NUMBERS
AT-0752-05-0901-X-1
AT-0752-05-0901-X-2

DATE: May 13, 2015

# THIS ORDER IS NONPRECEDENTIAL[1]

Elaine L. Fitch, Esquire, Washington, D.C., for the appellant.

Russell B. Christensen, and Jennifer D. Ambrose, Esquire, Washington,
 D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## ORDER

¶1      The administrative judge issued two decisions—a recommendation and a compliance initial decision—finding the agency noncompliant with the April 25, 2012 Final Order in the underlying removal appeal.  MSPB Docket No. AT-0752-

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

05-0901-C-1, Compliance File, Tab 5, Recommendation Decision (RD) (Sept. 13, 2012); MSPB Docket No. AT-0752-05-0901-C-2, Compliance File, Tab 4, Compliance Initial Decision (C-2 ID) (Feb. 13, 2013).[2]  The Board has joined these cases because doing so will expedite processing and will not adversely affect the interests of the parties.  5 C.F.R. 1201.36(b)(1)-(2).  For the reasons discussed below, we now find the agency in partial compliance with the Final Order and order it to take appropriate action to bring itself into full compliance.

## BACKGROUND

Equal Employment Opportunity Commission (EEOC) Referral and Compensatory Damages (MSPB Docket Nos. AT-0752-05-0901-E-1 and AT-0752-05-0901-P-1)

¶2        On April 25, 2012, the Board issued a Final Order adopting the EEOC's finding that the agency retaliated against the appellant for his protected equal employment opportunity activity.  The Board ordered the agency to cancel the appellant's 30-day suspension, restore him to duty effective August 1, 2005, and provide him appropriate back pay, with interest, and benefits.  *Smith v. Department of Transportation*, MSPB Docket No. AT-0752-05-0901-E-1, Final Order (Final Order) at 4 (Apr. 25, 2012).  The Board also forwarded the appellant's compensatory damages claim to the appropriate regional office for adjudication.  *Id.*  On August 24, 2012, the administrative judge issued an initial decision in the compensatory damages case awarding the appellant $175,000 in nonpecuniary compensatory damages and $1,122.84 in pecuniary damages. MSPB Docket No. AT-0752-05-0901-P-1, Compensatory Damages File, Tab 15, Initial Decision (P-1 ID) at 2.  Neither party petitioned for review of that decision.

---

[2] The first decision was a recommendation because it was issued under the Board's pre-November 2012 regulations; the second decision was an initial decision because it was issued after the regulations took effect.

First Petition for Enforcement (MSPB Docket Nos. AT-0752-05-0901-C-1 and AT-0752-05-0901-X-1)

¶3      On May 29, 2012, the appellant filed a petition for enforcement of the April 25, 2012 Final Order. On September 13, 2012, the administrative judge issued a recommendation finding the agency noncompliant. The administrative judge found that the agency had improperly placed the appellant in paid administrative leave status rather than cancelling his 30-day suspension, as ordered, and failed to submit evidence showing it paid appropriate back pay. RD at 3. The case was referred to the Board's Office of General Counsel to obtain compliance.

¶4      On September 27, 2012, the agency filed evidence of purported compliance. Specifically, the agency stated that it cancelled the appellant's 30-day suspension, as ordered; restored him to duty effective August 1, 2005; expunged all references to the suspension from his records; placed him in work status rather than paid administrative leave for the period during which the suspension had been in effect; and paid him appropriate back pay, with interest, and benefits. *See* MSPB Docket No. AT-0752-05-0901-X-1, Compliance Referral File (CRF-1), Tab 3 at 4-5; *see also* CRF-1, Tabs 4-12.

¶5      The appellant did not file a response. However, as part of his compensatory damages appeal, which was pending at the same time as the petition for enforcement, the appellant raised various claims of agency noncompliance with the April 25, 2012 Final Order, including claims that the agency failed to pay him appropriate back pay and interest. *See* P-1 ID at 12. The administrative judge declined to address these claims as part of the compensatory damages appeal and informed the appellant he could file a separate petition for enforcement.

Second Petition for Enforcement (MSPB Docket Nos. AT-0752-05-0901-C-2 and AT-0752-05-0901-X-2)

¶6      On October 25, 2012, the appellant filed a second petition for enforcement raising the enforcement claims he had attempted to present in his compensatory

damages case. On February 13, 2013, the administrative judge issued a compliance initial decision finding the agency noncompliant with the Final Order. The administrative judge ordered the agency to perform the following actions:

1. Submit the name and address of the responsible agency official;
2. Retroactively award the appellant, with interest, a Superior Contribution Increase;
3. Pay the appellant $1,850.75, with interest and any other benefits that would have accrued had his temporary promotion properly been extended 90 days;
4. Pay the appellant a $1,500.00 cash award, with interest;
5. Restore 472 hours of sick leave;
6. Destroy and expunge from all records associated with the appellant the Report of Investigation maintained by the agency's Security Division, and "do all within its power to undo the negative consequences that have flowed from its divulgence of the ROI"; and
7. Retroactively promote the appellant to the appropriate level of the J-Band.

C-2 ID at 8-9.

¶7    The agency filed a response on May 2, 2013, which the appellant challenged. MSPB Docket No. AT-0752-05-0901-X-2, Compliance Referral File (CRF-2), Tabs 5-6. Following a Board order to address the appellant's contentions, the agency filed another submission on March 2, 2015, which the appellant again challenged. CRF-2, Tabs 8-9.

¶8    For the reasons explained below, we now find the agency in partial compliance in both compliance referral cases.

## ANALYSIS

¶9    When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the

burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, <u>116 M.S.P.R. 319</u>, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, <u>113 M.S.P.R. 325</u>, ¶ 5 (2010).

<u>Cancellation of Suspension</u>

¶10 The administrative judge ordered the agency to cancel the suspension and to carry the appellant in a work status rather than in a paid administrative leave status during the period of the suspension. RD at 4. The agency provided evidence that it had done so. CRF-1, Tab 3 at 5, Tab 12 at 4-6. The appellant did not challenge this evidence. Accordingly, we find the agency in compliance on this issue.

<u>Back Pay</u>

¶11 The administrative judge ordered the agency to pay the appellant all back pay due him and to provide an explanation of its calculations. RD at 3. Pursuant to the April 25, 2012 Final Order, the agency also was required to pay interest on the back pay amount and to provide appropriate benefits. Final Order at 4.

¶12 The agency submitted several hundred pages documenting various financial transactions and personnel records relating to the appellant. *See* CRF-1, Tabs 3-12; *see also* CRF-2, Tab 8 at 6-27. However, because the agency did not provide a narrative statement or explain how the materials related to the back pay or interest issues, its documentation is incomprehensible. The agency's "data dump" does not satisfy the requirement that it provide a clear explanation of its compliance actions supported by documentary evidence. *See Vaughan*, <u>116 M.S.P.R. 319</u> at ¶ 5. We therefore find the agency noncompliant with its obligation to demonstrate that it paid the appellant appropriate back pay,

with interest, and benefits. To come into compliance, the agency must submit a detailed narrative explanation setting forth how it calculated the appellant's back pay; how it calculated interest on this amount; and what benefits it provided the appellant (with the exception of sick leave, which has been separately resolved). The agency must further provide proof that it paid these amounts. Finally, its submission must address not only back pay for the 30-day suspension, but for the financial consequences of the suspension, as further discussed below.

Other Financial and Benefits Issues

*Superior Contribution Increase (SCI)*

¶13    The administrative judge found that the agency improperly denied the appellant an SCI, the agency equivalent of a quality step increase, due to the suspension. C-2 ID at 3. The administrative judge ordered the agency to award the appellant an SCI, with interest, and to explain its calculations. C-2 ID at 8.

¶14    In its May 2, 2013 submission, the agency asserted that it had awarded the appellant an SCI effective January 8, 2006, and paid him $1,541.00 as a result. CRF-2, Tab 5 at 3. The agency stated that this amount reflected an SCI-1, the highest possible SCI award to an employee, and that the amount was calculated as 1.8% of the appellant's base pay as of January 8, 2006. *Id.* The appellant did not challenge this calculation.

¶15    The agency provided a Standard Form (SF) 50 documenting the award, CRF-2, Tab 5, Exhibit A at 1. However, the agency did not provide evidence, in the form of a check or Earnings and Leave statement, that it actually paid the $1,541.00 to the appellant. Nor did the agency address whether it paid the appellant interest on this amount or how that interest was calculated.

¶16    Following the Board's order to address the appellant's claims of noncompliance, the agency stated that it had paid this amount, plus interest, and provided documents purporting to show such payments. CRF-2, Tab 8. The documents cited by the agency list the appellant's $1500.00 retroactive cash

award and his $1,850.75 temporary promotion, *see* CRF-2, Tab 8 at 6, but do not reflect the 2006 SCI. We therefore find the agency noncompliant on this issue. The agency must submit proof that it paid the appellant $1,541.00. If this payment took place after the agency's interest calculations stopped on May, 14, 2013,[3] it must pay the appellant additional interest from that date and provide an explanation of how it calculated that interest.

*Retroactive Cash Award ($1500.00) and Temporary Promotion ($1850.75)*

¶17    The administrative judge found that the agency improperly denied the appellant a $1500.00 cash award he would have earned but for the suspension and ordered the agency to award the appellant this amount, with interest, and to explain its calculations. C-2 ID at 3-4, 8. The administrative judge also found that the agency improperly refused to extend the appellant's temporary promotion as a result of the suspension and that the value of the extended promotion would have been $1,850.75. C-2 ID at 4. The administrative judge ordered the agency to pay this amount, with interest. C-2 ID at 8.

¶18    In its May 2, 2013 submission, the agency stated that it had made a lump sum payment combining these amounts ($3350.75). CRF-2, Tab 5 at 4. It is unclear whether the agency provided evidence of actual payment; however, the appellant does not dispute that he received this amount, *see* CRF-2, Tab 6 at 6, and so we find the agency in compliance with respect to the principal on these two payments.

¶19    The agency further stated that it calculated the interest due on this combined amount as $1650.70. CRF-2, Tab 5 at 4. The appellant challenged this calculation and the agency's claim that this amount had been paid. CRF-2, Tab 6 at 6. The agency subsequently submitted a report detailing its interest

---

[3] The appellant conceded that the agency paid interest on the $1,541.00 through this date and did not challenge the calculation of the interest amount. CRF-2, Tab 9 at 3 n.2.

calculations (albeit without the required narrative explanation). CRF-2, Tab 8 at 13-21. In his response, the appellant did not specifically challenge these calculations or that he had received the requisite amount. *See* CRF-2, Tab 9. Accordingly, we find the agency in compliance regarding interest on these payments.

*Other Benefits Issues*

¶20    The appellant complains that the agency "wholly fails to address the requirements of benefits restoration." CRF-2, Tab 6 at 6, Tab 9 at 8. Because the appellant did not respond to the agency's evidence of purported compliance in the first compliance case (MSPB Docket No. AT-0752-05-0901-X-1), and did not raise any benefits issues except sick leave in the second compliance case (MSPB Docket No. AT-0752-05-0901-X-2), we would ordinarily find that he had waived any objections or that he needed to raise them in a separate enforcement proceeding. However, because the agency failed to provide a narrative explanation or comprehensible evidence in the first compliance case (MSPB Docket No. 0752-05-0901-X-1), we will permit the appellant to raise this claim at this late date. The agency must provide a narrative explanation of benefits awarded the appellant in connection with the cancelled suspension and any actions flowing from it (i.e., the actions listed in the administrative judge's February 13, 2013 compliance initial decision, C-2 ID at 8-9). The agency does not need to provide an explanation of the appellant's sick leave balance, however, because this issue has been resolved as explained below.

Sick Leave

¶21    The administrative judge ordered the agency to restore to the appellant 472 hours of sick leave. C-2 ID at 8. The agency stated that it had done so, and the appellant did not challenge this statement. CRF-2, Tab 5 at 4. Accordingly, we find the agency in compliance on this issue.

Report of Investigation (ROI)

¶22    The administrative judge ordered the agency to "destroy and expunge from all records associated with the appellant the Report of Investigation (ROI) [relating to his suspension] maintained by the Security Division." C-2 ID at 8. The administrative judge further ordered the agency to "cease the practice of divulging the existence or the content of the ROI"—which the appellant alleged had caused him to miss out on multiple promotions and other opportunities—and to "do all within [the agency's] power to undo the negative consequences that have flowed from its divulgence of the ROI, including but not limited to, informing those to [whom] it has divulged the ROI that the suspension has been rescinded and was taken as a result of a prohibited personnel practice." C-2 ID at 8-9.

¶23    In its March 2, 2015 submission, the agency provided a signed memorandum from Willie Gripper, Director, Joint Security and Hazardous Materials Safety Office, to a labor and employment attorney, "acknowledg[ing]" that all paper and electronic copies of the ROI had been destroyed. CRF-2, Tab 8 at 28. The memorandum stated that Mr. Gripper personally witnessed the destruction of the paper document and verified that no electronic copies existed. *Id.* The appellant contended that this memorandum was insufficient to demonstrate that the agency had expunged the document as required by the administrative judge's order, and demanded a sworn declaration as proof. CRF-2, Tab 9 at 9. We disagree. The appellant has not pointed to any reason to doubt the veracity of the memorandum. We therefore find the agency in compliance concerning its obligation to destroy and expunge the ROI from all records associated with the appellant. If, in the future, the appellant discovers information that leads him to believe the ROI was not in fact destroyed, he may file a new petition for enforcement.

¶24        Regarding its obligation to "undo the negative consequences" flowing from its free divulgence of the ROI's existence, the agency stated in its narrative response to the initial decision that of the seven agency employees authorized to view the ROI (before its destruction), all except one had retired or left the agency before the compliance initial decision was issued. CRF-2, Tab 5 at 5. The agency further identified six security personnel who had been involved in the creation or custody of the ROI. The agency stated that "current personnel security specialists who are aware there was once an ROI have been instructed not to reference or in any way allude to the fact that there once was an ROI in" the appellant's personnel security file. *Id.* at 8. The agency did not produce any documentary evidence substantiating this assertion, however. Nor did the agency address the requirement in the compliance initial decision that it inform employees aware of the ROI that the appellant's suspension had been rescinded and was taken as a result of a prohibited personnel practice. Accordingly, we find the agency in noncompliance on these issues.

Promotion to J-Band

¶25        The appellant alleged that he applied for 25 positions in the higher graded J-Band but that he was not selected for any of them because the agency had notified each selection official of his suspension. After the agency failed to offer any evidence rebutting this claim, the administrative judge ordered the agency to retroactively promote the appellant to the appropriate level of the J-Band. C-2 ID at 9.

¶26        In its May 2, 2013 filing, the agency submitted evidence that it had retroactively promoted the appellant to a J-Band Program Manager position effective April 15, 2006. CRF-2, Tab 5 at 8. The original selectee had received a temporary promotion effective April 16, 2006, and was made the permanent manager in August 2006. *Id.* However, rather than giving the appellant a temporary promotion from April 15, 2006, to August 2006, and then a permanent

promotion thereafter (as it had done with the selectee), the agency gave him a temporary promotion through February 2013, when he apparently was awarded a J-Band promotion outside of the compliance process. *See id.* at 8-9; *see also* CRF-2, Tab 6 at 11 (the appellant was selected for a J-Band position on February 10, 2013). The agency contended that processing the retroactive promotion as temporary until his actual promotion "allows the Appellant to preserve a true reflection of his work history and experience gained from April 2006 to the present."[4] CRF-2, Tab 5 at 9.

¶27    The appellant challenged this statement. He asserted that making his promotion temporary did not return him to the status quo ante as required by the compliance initial decision. CRF-2, Tab 6 at 11. He further asserted that he did not understand the agency's claim that "making his promotion permanent would require the removal of records reflecting his details over the years . . . the Agency could just as easily have made Appellant's promotion permanent and simply corrected the SF-50s reflecting [Appellant's] details to indicate the correct pay band and salary." *Id.* at 12.

¶28    We agree with the appellant. Although the agency claims to be acting in the appellant's best interest, granting him a temporary promotion when the actual selectee received a permanent promotion does not provide the appellant the benefits he would have received in the absence of the improper suspension. Moreover, it is not clear why the agency cannot make his promotion permanent from August 2006, (mirroring actual events) while preserving his actual work history. Accordingly, the agency must either submit evidence that it has made his promotion permanent, or must submit further explanation—including sworn declarations from appropriate personnel and any regulations or policies upon which it relies—to support its position that it cannot or should not do so.

---

[4] The agency asserted, without contradiction, that the total amount of back pay was the same whether the retroactive promotion was processed as temporary or permanent. CRF-2, Tab 5 at 9.

¶29     The agency must also submit a narrative explanation and documentary evidence concerning back pay, interest, and benefits resulting from the April 15, 2006 promotion.  To the extent such information may already be in the record, the Board was not able to locate or comprehend it due to the lack of explanation.  The agency must remedy this deficiency to achieve compliance.

Name and Address of Responsible Agency Official

¶30     The administrative judge ordered the agency to provide the name and address of the agency official responsible for compliance.  C-2 ID at 8.  The agency responded that the responsible agency officials are Joyce Vasser, Manager of the Shared Services Center for the Agency's Southern Region, and Willie Gripper, Director, Joint Security and Hazardous Materials Safety.  CRF-2, Tab 5 at 2-3.  Ms. Vasser is responsible for the financial and personnel aspects of the compliance process and Mr. Gripper is responsible for the ROI.  *Id.*  We find the agency in compliance on this issue.

### FURTHER ACTIONS NEEDED FOR COMPLIANCE

¶31      Within **21 days** of the date of this order, the agency shall submit the following:

>    1.    A narrative explanation, supported by documents and/or affidavits as appropriate, regarding the back pay due the appellant for the 30-day suspension period and for the financial consequences of the suspension. The agency must specifically address, among any other relevant financial consequences, the SCI and the appellant's promotion to the J-Band.  The agency must also submit a narrative explanation and supporting documentation regarding how it calculated and paid interest on these amounts.
>
>    2.    A narrative explanation, supported by documentary evidence, regarding benefits owed the appellant during the back pay period and as

a result of any financial consequences of the suspension (except for sick leave).

3.      Sworn declarations from the remaining agency employee authorized to have viewed the ROI and from the six security personnel involved in the creation or custody of the ROI attesting that:  (1) they have been instructed not to reference or in any way allude to the fact that there once was an ROI in the appellant's file; and (2) they were informed that the appellant's suspension has been rescinded and was taken as a result of a prohibited personnel practice.

4.      Evidence that the agency made the appellant's J-Band promotion permanent as of August 2006, in a manner that also preserves his work history; or sworn declarations from appropriate personnel and relevant regulations and policies supporting the agency's position that it cannot or should not make the promotion permanent as of August 2006.

¶32      If the agency fails to submit this information, the Board may issue an order to show cause why sanctions should not be imposed against the responsible agency official pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.83(a)(2).

¶33      The appellant shall file a response within **14 days** of the agency's submission.  Failure to submit a response within the required time period may cause the Board to assume the appellant is satisfied and dismiss the petition for enforcement.


FOR THE BOARD:                  _____
                                William D. Spencer
                                Clerk of the Board

Washington, D.C.